IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WISEMAN OIL CO., INC., | ) | |
| ESTATE OF JOSEPH WISEMAN, | ) | |
| ESTATE OF RUTH N. WISEMAN, | ) | |
| EILEEN FANBURG, AS | ) | |
| EXECUTRIX | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 011-1011 |
| | ) | |
| TIG INSURANCE CO. F/K/A | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| TRANSAMERICA INSURANCE | ) | ECF No. 36 |
| CO. | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION ON DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS**

**I. CASE HISTORY; SUMMATION**

The claims presently before this Court are for (1) declaratory judgment as to Defendant TIG Insurance Company's (hereafter "Defendant" or "TIG") duty to defend; (2) breach of contract concerning Defendant's duty to defend and covenant of good faith and fair dealing; and (3) breach of TIG's statutory duty of good faith under 42 Pa. Cons. Stat. Section 8371.

Plaintiffs Wiseman Oil Co., Inc., Estate of Joseph Wiseman, Estate of Ruth N. Wiseman and Eileen Fanburg as Executrix (hereafter collectively "Plaintiffs" or "Wiseman") assert that they were entitled to a defense by their insurer, TIG, against claims brought in 1997 by the United States under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") (the "Underlying Litigation").

In July, 2004, Plaintiffs corresponded with TIG, enclosing a certificate of insurance for policy number 12513225 and requesting a defense.[1] In April, 2005, Defendant advised that it had "conducted a diligent search" and was "at this time . . . unable to provide any coverage determination" and requested Wiseman to provide "a copy of the alleged policy . . . [or] additional secondary evidence". The Underlying Litigation was administratively closed until December, 2009 and in February, 2010, Plaintiffs provided TIG: (1) a second certificate of insurance discovered in the files of a customer and indicating the existence of policy 12513225; and (2) certificates of insurance for three additional insurance policies numbered 12069979, 18438624, and 11324471.[2] Defendant responded that it would "continue to keep [Plaintiffs] updated as to the status of our investigation." By correspondence of June 22, 2010, TIG indicated that it had "conducted a diligent and comprehensive search of [its] records" and that in the absence of copies of the alleged policies, it was "without foundation to further proceed in the handling of this matter"

---

[1] It appears that Defendant ceased being an operating company sometime between 1997 and 2004. See, *e.g.*, Transcript of Oral Argument on April 5, 2012 ("Oral Argument") at p. 30.

[2] Plaintiffs assert that these certificates "show that the Wisemans had successive one-year liability policies" with Defendant between 1978 and 1982.

and that if it did not receive the additional information requested within thirty (30) days it would "take no further action."

The deposition testimony of TIG's Rule 30(b)(6) representative in this litigation is that "over its operating life TIG's document policy was to stick stuff in boxes. It had no central database, no standard way of identifying things, and boxes of documents could be sent to Iron Mountain for storage but with no rhyme or reason." See January 31, 2012 Deposition at 192 (Ex. A to Plaintiffs' Opposition to TIG Insurance Company's Motion for Judgment on the Pleadings") (hereafter "Plaintiff's Opposition to Judgment"). See also id. at 193, 198 (testifying that there are presently still 160,000 unopened boxes and "no way to figure out if Wiseman Oil is in any of those boxes").

A Consent Decree was entered in the Underlying Litigation on April 20, 2011. Plaintiffs' Complaint in this action was filed on August 4, 2011.

Presently pending is Defendant's Motion for Judgment on the Pleadings on statute of limitations grounds which, for reasons set forth below, will be denied.

## II. STANDARD OF REVIEW

A Motion for Judgment on the Pleadings under Fed. R. Civ. Proc. 12(c) may be granted when "the movant clearly establishes that no material issue of fact remains to be resolved" and that it is "entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 259 n. 25 (3d Cir. 2010). The

Court construes the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Id.; see also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005) (citing Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).[3] And it may consider undisputedly authentic documents attached to or submitted with the Complaint, as well as evidence outside the complaint/other items of record. See, *e.g.*, Pryor v. Nat'l Collegiate Athletic Ass'n., 228 F.3d 548, 560 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994).

### III. ANALYSIS AS TO STATUTE OF LIMITATIONS APPLICABLE TO DEFENDANTS' CONTRACTUAL DUTY

In Pennsylvania, claims for breach of duty pursuant to an express written contract (and related claims for declaratory judgment) are subject to the four (4) year statute of limitations provided by 42 Pa. Cons. Stat. Section 5525(a)(8), which begins to run when the cause of action accrues.

The Court is in accord with Plaintiffs' observations regarding applicability of the majority rule to this case. Our sister Court for the Middle District of Pennsylvania concluded, almost fifty (50) years ago, that under Pennsylvania law the statute of limitations on an action for breach of an insurer's duty to defend would not begin to run until termination/judgment against the insured in the underlying litigation, rather than "on the date of the disclaimer" by the insurer. See Moffat v.

---

[3] Compare Defendant's Brief in Support of Motion for Judgment at 10-11.

Metro. Cas. Ins. Co. of N.Y., 238 F.Supp. 165, 175 (M.D. Pa. 1964) (concluding that an interpretation by which "an insured could find that the statute had run long before he had incurred his trial and appellate expenses" would be "*absurd*" and that "the Legislature is presumed not to intend unreasonable or absurd results") (emphasis added);[4] id. (concluding that "statute of limitations does not begin to run until the right of action is complete", i.*e*., in Moffat, when the Supreme Court denied petition for reargument, and that until that time insurer "had the right at any time to revoke its disclaimer" and assume its duty to defend).[5] The District Court's interpretation has not been controverted by the Pennsylvania Court[6] and its reasoning that "the right of action is

---

[4] See also Lambert v. Commonwealth Land Title Ins. Co., 811 P.2d 737, 739 (Cal. 1991) (*en banc*) (noting "untenable" result if "statute of limitations on a lawsuit to vindicate the duty to defend [were allowed to expire] even before the duty itself expires").

[5] See also Dutton-Lainson Co. v. Cont'l Ins. Co., 716 N.W.2d 87, 100 (Neb. 2006) (observing that "courts have ordinarily determined accrual of [breach of contractual duty to defend] to be concurrent with termination of underlying litigation"); Vigilant v. Luppino, 723 A.2d 14, 19 (Md. 1999) (explaining that duty to defend is, by its very nature, continuing and "[a]n insured should be allowed to expect the insurer to step in and cure its breach so long as the underlying action is continuing").

[6] It has been expressly applied in Wotring v. Planet Ins. Co., 11 Pa. D&C.3d 452, 457 (Pa. Ct. Comm. P. 1979) (applying Moffat to conclude that "statute of limitations on the breach of the alleged duty to defend commenced to run when judgment was entered against plaintiff").

While this Courts finds that neither Moffat nor Wotring have been interpreted to turn on a "no action" clause in an underlying insurance contract (and this Court would not find such an interpretation of Moffat plausible given the analysis articulated by the Middle District of Pennsylvania in that case), it nonetheless notes in response to Defendant's Supplemental Brief, Plaintiffs' assertion that three (3) of the TIG form policies produced in this action contain a "no action" clause (i.*e*., a clause similarly providing that no action will lie against the insurer until the amount of the insured's obligation to pay has been finally determined). See Plaintiffs' Supplemental Brief in Opposition to Judgment at 2-3. Cf. UTI Corp. v. Fireman's Fund Ins. Co.,

complete" only after there is a final judgment against the insured has become the clear majority rule. See, *e.g.*, Dutton-Lainson Co. v. Cont'l Ins. Co., 716 N.W.2d 87, 101-02 (Neb. 2006) (referring to "clear majority view"); Vigilant Ins. Co. v. Luppino, 723 A.2d 14, 18-19 (Ct. App. Md. 1999) (collecting cases); Kielb v. Couch, 374 A.2d 79, 81-83 (N.J. Super. 1977)(also citing cases in other jurisdictions and noting that "[a]s the full amount of his claim for reimbursement was not ascertainable until the termination of the [underlying action], it was not until then that plaintiff was in a position to assert his complete claim"). See also UTI Corp. v. Fireman's Fund Ins. Co., 896 F.Supp. 362, 368 (D.N.J. 1995) (applying Moffat and observing that "under Pennsylvania law, the statute of limitations does not begin to run against insurer [as to breach of contract] until the conclusion of the litigation against the insured by the injured party"); id. (further noting that it would be "inefficient for plaintiff to" sue for coverage "prior to that time", when "the

---

896 F.Supp. 362, 369 (D.N.J. 1995) (noting, after applying Moffat rule to breach of contract claim and concluding absence of statute of limitations bar to other counts, that "[f]or sake of completeness, *even if the law were unclear*, the court would be constrained to reject defendants' argument for a wholly distinct reason – the language of the policies themselves *requires* plaintiff to await a final judgment before suing").

defense and indemnity expenses incurred . . . are not determined"); Cluett, Peabody & Co. v. Campbell, Rea, Hayes & Large, 492 F.Supp. 67, 77 n. 13 (M.D. Pa. 1980).

Defendant now predicates its assertion that the statute began to run several years prior - when Plaintiffs tendered notice of the Underlying Litigation on July 1, 2004 – significantly on the decision of the Third Circuit Court of Appeals in Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224 (3d Cir. 2005).[7] But Sikirica concerned an insurer's breach of its statutory duty of good faith, and the Circuit distinguished it from Moffat on those grounds. See Sikirica, 416 F.3d at 224 ("The plaintiff in Moffat alleged breach of contract, not bad faith."); id. at 223-225 (holding that under Pennsylvania law, as predicted by Third Circuit, statutory bad faith claim (a) was subject to two-year tort statute of limitations period and (b) began to run with letter "unambiguously inform[ing insured] of its refusal to defend") (citing Adamski, *infra*); cf. id. (also concluding that breach of contract claims were unmaintainable where underlying litigation was clearly outside policy coverage).[8] See also Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1042 n. 8 (Pa. Super.

---

[7] To the extent Defendant has also attempted to predicate its assertion on cases involving commercial contract disputes, breach of a non-compete agreement, or Pennsylvania's No-Fault Motor Vehicle Insurance Act, the cases are inapposite. See generally, Defendants' Brief in Support of Motion for Judgment on the Pleadings.

[8] Cf. also Plaintiffs' Supplemental Brief in Opposition to Judgment at 2 (noting that in Sikirica, the breach of contract claims were filed more than 10 years after the insurer's denial of defense, but 15 months after the final decision in the underlying litigation, and those claims were resolved against plaintiff on the merits, rather than statute of limitations grounds (which was raised as to the statutory duty of good faith)); Sikirica 416 F.3d at 219 (noting that denial letter issued 1991, Superior Court affirmed verdict in 2001 and action was filed in 2002; District Court held bad faith claim barred by statute of limitations and granted judgment on breach of contract claims because complaint in underlying litigation turned on intentional misconduct outside policy coverage).

1999) (noting that Moffat rule "applied only to the breach of contract action" as opposed to bad faith claims under Section 8371, which accrue when insurer first provides definite notice of refusal to indemnify or defend); discussion *infra* at Section IV.

Pennsylvania cases cited by Defendant and stating the general rule that, *e.g.*, a statute of limitations period begins to run when "all of the elements of the claim exist" (Myers v. USAA Cas. Ins. Co., 444 A.2d 1217, 1221 (Pa. Super. 1982)) or when "the right to institute suit arises" (Adamski, 738 A.2d at 1042; Crouse v. Cyclops Indus., 560 Pa. 394, 403 (2000)) are also entirely consistent with the Moffat Court's recognition that an insurer's duty to defend is a continuing contractual obligation which may yet be performed so long as the underlying action continues and, accordingly, the cause of action is not complete until the underlying action is over. Cf. Centre Concrete Co. v. AGI, Inc., 559 A.2d 516, 518 (Pa. 1989) (noting "general rule" that "the statute of limitations begins to run at the time when a complete cause or right of action accrues or arises" and explaining extension appropriate to case in reversing lower court's grant of judgment on the pleadings).[9]

Finally, the Court (1) finds Defendant's discussion of Gedeon v. State Farm Mutual Auto Ins. Co., 261 F.Supp. 122, 123 (W.D. Pa. 1966), modif'd *sub. nom.,* Panizzi v. State Farm Mutual

---

[9] Cf. also id. at 519 ("Statutes of limitation commence to run against a cause of action from the time it accrues, or from the time when the holder thereof has the right to . . . commence proceedings to enforce his rights.")

Auto Ins. Co., 386 F.2d 600 (3d Cir. 1967), inapposite and unpersuasive;[10] and (2) observes that even if statute of limitations period had otherwise run – which the Court expressly concludes, in accordance with Moffat, it had not – the case would present a significant question as to whether Defendant should be estopped from raising a statute of limitations defense.[11]

---

[10] See Defendant's Supplemental Brief in Support of Judgment . Compare Plaintiffs' Supplemental Brief in Opposition to Judgment at 6-7 (noting that in Gedeon, plaintiff was driving car at time wife, a passenger, was killed in an automobile accident; he then sued himself *pro se* in State court under the Wrongful Death Act and obtained a judgment against himself for $51,000). Gedeon's claim against his insurer for breach of duty to defend was rejected by the Pennsylvania Supreme Court because "even if there were a breach of [insurer's] contractual obligation to defend, [Gedeon] had shown no damages resulting from such breach". Gedeon v. State Farm Mut. Auto Ins. Co., 188 A.2d 320, 321 (Pa. 1963). When Gedeon's subsequent Federal court claims for negligent claim handling and breach of fiduciary duty were ultimately dismissed, this Court observed that claims for breach of a duty to defend were barred by *res judicata*, but made in *dicta* statements that "the statute of limitations did not begin to run until the entry of an actual judgment" but also that "a breach occurs so soon as the defendant declines defense of the suit against the insured". Gedeon, 227 F.Supp. 342, 344-45 (W.D. Pa. 1964), revs'd, 342 F.2d 15 (3d Cir. 1965); Gedeon, 261 F.Supp. at 123. Courts considering this portion of Gedeon have declined to follow it and adopted the Moffat rule. See Wotring, 11 Pa. C&D.3d at 456-57 (observing in applying Moffat that "importance of first incurring trial expenses before instituting suit for breach of duty to defend is demonstrated by Gedeon v. State Farm Mut. Auto Ins. Co., 188 A.2d 320 (Pa. 1963), wherein the Pennsylvania Supreme Court held that there can be no recovery for a breach of duty to defend unless defense costs have been incurred"); Kielb v. Couch, 374 A.2d 79, 81- 82 (N.J. Super. 1977) (noting that "[a]lthough plaintiff could have started an action against defendant prior to the completion of the third-party litigation for then accrued costs, such a procedure would have resulted in piecemeal litigation and a multiplicity of suits, both of which are looked upon with disfavor in the law"); id. (observing that "the facts giving rise to [Gedeon] cause [its] persuasiveness to be diminished" where "insured conducted the defense . . . himself and hence incurred no damage").

[11] The Court observes that, considering the facts in the light most favorable to the Plaintiffs, evidence of record suggests that Defendant purposefully misled Plaintiffs into believing that it was considering taking over the defense and diligently looking for the related missing policy documents. Plaintiffs allege, and provide documentary and other evidence suggesting, that TIG did not undertake a search of its un-indexed document boxes, failed to disclose its record-keeping

As Plaintiffs' cause of action for breach of the duty to defend accrued – *i.e.*, its right of action was complete – when the Underlying Litigation was terminated and the defense costs were fixed, this claim and Plaintiffs' corresponding declaratory judgment claim[12] are within the applicable statute of limitations.

IV. **ANALYSIS AS TO STATUTE OF LIMITATIONS APPLICABLE TO DEFENDANTS' BREACH OF STATUTORY DUTY OF GOOD FAITH**

Claims for a bad faith denial of coverage by an insurer, in violation of 42 Pa. Cons. Stat. Section 8371, are subject to a two (2) year limitations period under 42 Pa. Cons. Stat. Ann. Section 5524. See Ash v. Continental Ins. Co., 593 Pa. 523, 535 (Pa. 2007); Haugh v. Allstate Ins. Co., 322 F.3d 227, 236 (3d Cir. 2003). It begins to run when "an insurer clearly and unequivocally puts an insured on notice that he or she will not be covered under a particular policy for a particular occurrence." CRS Auto Parts Inc. v. Nat'l Grange Mut. Ins. Co., 645 F.Supp.2d 354, 365 (E.D.

---

deficiencies, represented to Plaintiffs that its searches for related policies were "diligent", "complete", "exhaustive" and "comprehensive", and that its records "would reflect the existence of such policies . . . if such policies had been issued". Compare Testimony of Defendant's Rule 30(b)(6) representative that in 2005 TIG had approximately *210,000 boxes* of un-indexed documents, and searched for policies by looking through approximately 100 three-ring binders containing *unorganized* "listings of numbers" with a policy search success rate "in the *50 percent* range". See Plaintiffs' Opposition to Judgment at 17-23 and Ex. A thereto; Nesbitt v. Erie Coach Co., 204 A.2d 473, 475 (Pa. 1964); Commonwealth v. Transamerica Ins. Co., 341 A.2d 74, 78 (Pa. 1975).

[12] See, *e.g.*, Simon Wrecking Co. v. AIU Ins. Co., 350 F.Supp. 624, 639 (E.D. Pa. 2004) (observing that Pennsylvania courts apply general rule that "statute of limitations for a declaratory judgment action is the same as the substantive underlying legal remedy").

Pa. 2009) (citing Adamski, 738 A.2d at 1042-43); see also Sikirica, 416 F.3d at 224-25 (holding that statute began to run when insurer "unambiguously . . . . provided clear notice of its denial of coverage and refusal to defend" the class action allegations). Language which has been held to trigger the running of the statute includes, *e.g.*, CRS Auto Parts, 645 F.Supp.2d at 367 ("We hereby rescind any insurance coverage . . . . You should be aware that there is no insurance coverage for you, or anyone else, . . . . Please accept this as full and final declination of coverage."); Adamski, 738 A.2d at 1038 ("[Insurer] hereby disclaims and denies any and all liability or obligation to you . . . . [Insurer] will take no further action with respect to any claim . . . and hereby withdraws from the matter entirely."); Sikirica, 426 F.3d at 218 ("Please be advised that [insurer] is denying coverage . . . . The class allegations cited would not fall within the insuring agreement . . . .").

  Here again, the Court is in accord with Plaintiffs' legal analysis. TIG's April, 2005 correspondence provides, in marked contrast, no such notice but advises that it is "unable to locate evidence sufficient to establish the terms, conditions and/or provisions of the policy. As such [*sic*], at this time we are unable to provide any coverage determination . . . ." It goes on to "reserve all of [insurer's] rights and defenses in every respect under the terms, conditions and provisions of any alleged policy or policies you may identify." Defendant's correspondence thus (certainly when viewed in the light most favorable to the non-moving party) bears more resemblance to a "reservation of rights" letter and far less resemblance to language found sufficient to constitute a denial of coverage. See Plaintiffs' Opposition to Judgment at 15-17;

Simon Wrecking Co., 350 F.Supp.2d at 632-33 (concluding that insurer's correspondence requesting additional information "was not a denial of coverage" but rather "a reservation of rights letter" and "[w]ithout a denial of benefits, there was no act of bad faith at [that] time" and the statute "could not have started to run").

The statute of limitations period for the alleged breach of duty to defend commences upon a clear or unequivocal denial of coverage by the insurer which, in this case, was first afforded by TIG's June 22, 2010 correspondence clearly stating that absent Plaintiffs' provision of the requested support within thirty (30) days, TIG would "take no further action". Plaintiffs' August 4, 2011 claim was therefore within the two year statutory period.[13]

---

[13] The Court observes, in response to discussion at Oral Argument, that the Adamski Court rejected the plaintiff's contention that the insurer committed separate and distinct acts of bad faith or "continuing wrongs" in its denials of coverage through, *e.g.*, its refusal to defend or indemnify, failure to settle, lack of adequate basis for denial, and failure to conduct a diligent investigation. The Court held that each alleged act "arose from", "merely reaffirmed", and constituted a "continuation of" a previous denial of coverage. See Adamski, 738 A.2d at 1037-39, 1042; id. at 1038-39 (noting that "allegedly faulty . . . investigation upon which [denial decision] was based necessarily preceded the [clear disclaimer] letter" which triggered statute); Sikirica, 416 F.3d at 225 (discussing Adamski and other cases holding alleged continuing acts of bad faith each arose from denial of coverage); Simon Wrecking, 350 F.Supp.2d at 633-34 (holding that bad faith claim accrued on date of bad faith denial, rather than on date of each continuing denial of coverage). See also UTI Corp., 896 F.Supp. at 368 (noting that bad faith claims included insurer's refusal to defend or indemnify "for reason that it has not received sufficient information to render a coverage opinion, while failing to undertake its own independent investigation to obtain information from other sources" and concluding claim brought within months of insurer's letter advising it "had not completed [its] investigation, and advising [insured] to take appropriate steps to protect its interests" was not time-barred); Adamski, 738 A.2d at 1040 (distinguishing Rottmund v. Continental Assur. Co., 813 F.Supp. 1104 (E.D. Pa. 1992) as alleging "separate later acts" of bad faith conduct where insurer denied benefits and then concealed information). In this case, as discussed in text *supra*, Defendant' denial letter issued June, 2010 and claims for bad faith were filed within the statutorily-permitted period.

## V. **CONCLUSION**

Accordingly, upon review of the pleadings and briefs of record, as well as the evidence before the Court, it will be ordered that Defendant's Motion for Judgment on the Pleadings be denied.

_____
Lisa Pupo Lenihan
United States Chief Magistrate Judge

Date:   May 22, 2012